BOWEN, Judge.
This appeal is from the consolidated trial of A1 Reeves, a/k/a Cedric Goldston, and Jerry Terice Risper. Reeves was convicted of first degree rape, first degree sodomy, and first degree burglary. He was sentenced as a habitual felony offender to three consecutive terms of life imprisonment. Risper was convicted of first degree burglary and sentenced to life imprisonment. Both Reeves and Risper appeal from those convictions.
I. REEVES
Appellant Reeves raises two issues on this appeal:
A. Reeves argues that the trial court committed reversible error in allowing into evidence testimony that he had previously been in the penitentiary.
On the prosecutor’s direct examination of appellant Risper’s wife, the following occurred:
“Q. What was your husband, Jerry Ris-per’s, reaction to being stopped by the police?
“A. He said — he was jumpy, scared. And he asked Cedric,—
“MR. PARTRIDGE [trial counsel for Reeves]: Your Honor, may I approach the bench at this point?
“(A bench conference was held, during which the following occurred:)
“MR. PARTRIDGE: I need to do something to protect Mr. Reeves from what she may say about his statement in the car.
“MR. BERTOLOTTI [defense counsel for Risper]: He said he’s F’d up, according to preliminary hearing testimony. Mr. Reeves made a statement in the car. At this point that’s the one he’s talking about.
“MR. PARTRIDGE: I need to do something here to protect him from her blurting that out, regardless of whether he asked her what Mr. Reeves said..
“MR. BERTOLOTTI: I want to tell the Court before you stop him from bringing it out, I’m going to simply — because his statement refers to I and not we, I’m going to use it if Chris doesn’t.
“MR. PARTRIDGE: I don’t see how it’s relevant to either side.
“THE COURT: Overruled.
*568 “MR. PARTRIDGE: For the record, let me, for the record, state that I am referring to the statement that Mrs. Risper made in her statement to Officer Kenneth Watts and Johnny Jenkins on June 29th, 1990, at two fifteen p.m. where she alleges that Mr. Reeves made the statement as they were pulled up by the police, quote, I done F’d up now, I shouldn’t have did it. Now I’m going back to the penitentiary.
“(End of bench conference.)
“MR. GALANOS [District Attorney]:
“Q. When the police stopped you, what, if anything, did your husband, Jerry Ris-per, say to you?
“A. Get in the passenger’s — I mean, get in the driver’s seat.
“Q. Did he say — how many times did he say that?
“A. Two.
“Q. What, if anything, did the Defendant, Cedric Reeves or Cedric Golston, say?
“A. I done F’d up now, I’m going back to the penitentiary.
“JUROR: I didn’t understand that.
“MR. PARTRIDGE: I object to the question, move to strike.
“THE COURT: Overruled. Go ahead and repeat your answer.
“A. I done F’d up now. I’m going back to the penitentiary.”
Here, Reeves never stated any specific ground of objection to Mrs. Risper’s testimony, which was admissible under at least one theory. “The rule is that the acts, declarations, and demeanor of an accused, before or after an offense, whether a part of the res gestae or not, are admissible against him, but, unless a part of the res gestae, are not admissible for him.” Shadle v. State, 280 Ala. 379, 384, 194 So.2d 538, 542 (Ala.1967). Therefore, Reeves’ general objection preserved nothing for review. See C. Gamble, McElroy’s Alabama Evidence § 426.01(7) (4th ed. 1991); Hoffman and Schroeder, Offering and Objecting to Evidence in Alabama, 47 Ala.Law. 304, 307-308 (1986).
B. Reeves also contends that the trial court erred in denying his request for a delay of trial.
Immediately prior to trial, Reeves requested a continuance on two grounds. One of those grounds was because he had not received the DNA test results. Defense counsel represented that he had filed a request for delay “last Friday,” which was three days before trial on Monday, and acknowledged that the district attorney had informed him “last Thursday” that he did not intend to use any DNA test results. The district attorney responded by stating that no DNA testing had been done. At trial, Elaine Scott, a criminalist for the Alabama Department of Forensic Sciences, testified that she had mailed blood samples to the FBI laboratory for DNA testing, and that “last Thursday she had contacted the FBI and learned that the laboratory “had not even begun on the case.” She testified that “as a general rule, I would say you would be looking at a minimum of four months and probably more like six” months to get the test results from the FBI. The record contains no indication that any DNA test was ever performed.
Under these circumstances, the trial court did not abuse its discretion in denying the motion for delay.
“A motion for continuance is addressed to the discretion of the court and the court’s ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923).”
Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986).
*569 II. RISPER
Appellant Risper raises one issue on appeal. He contends that the trial court erred in permitting the prosecutor to question him about his silence or his failure to give an exculpatory story while in police custody.
After his arrest, Risper waived his constitutional rights and gave the police a brief statement denying any knowledge of the burglary. However, at trial Risper testified in detail about the events of the day of the burglary. On cross-examination, the district attorney was permitted, over objection, to make inquiry as to whether, in the four months and two weeks he had been in custody, Risper had ever told anybody the story that he has just told the jury.
Because Risper voluntarily waived his Miranda rights and made a statement, the prosecutor’s questions did not constitute improper comment on his post-arrest silence. Bogan v. State, 529 So.2d 1029, 1030 (Ala.Cr.App.1988).
“Here, as in Anderson [v. Charles, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980)], the prosecutor’s questions and comments ask why, if [the defendant’s] trial testimony were true, he didn’t tell the police that he was not home all night instead of telling them that he was. ‘Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.’ Anderson, 447 U.S. at 408, 100 S.Ct. at 2182.”
Bradley v. State, 494 So.2d 750, 767 (Ala.Cr.App.1985), affirmed, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.